United States of America
District of Massachusetts

Essex, ss.


| | | |
|---|---|---|
| Amanda Anderson | ) | |
| | ) | |
| v. | ) | |
| | ) | 16-CV-10398 |
| Discover Financial Services, | ) | |
| Discover Student Loans, Discover Bank, | ) | |
| Student Loan Corporation | ) | |

## Complaint

## <u>Introduction</u>

Amanda Anderson moved to Massachusetts in May 2014, leaving her job as a chemist in Wisconsin to take employment as a public school teacher in Lynn, Massachusetts. She would be unemployed over the summer, before school resumed after Labor Day. Ms. Anderson, like many recent college graduates, has a large amount of outstanding student loans. One of her preparations to move cross-country was to place her loans into forbearance. Discover Bank and its related entities (collectively "Discover") hold some of Ms. Anderson's student loans.

While other companies were helpful and accommodating, Discover asserted that it did not allow loans to be placed in forbearance, but would allow a reduction in monthly payments while Ms. Anderson was unemployed over the summer. Ms. Anderson was also compelled by Discover to initiate an automatic payment regime, at a rate dictated by Discover ($470/month).

Discover later wrote and demanded a higher rate of payment ($503/month), but it failed to modify or assist Ms. Anderson in modifying the automatic payment. The automatic payment allows Discover to deduct money directly from Ms. Anderson's bank account. Discover was three days late deducting the money, but assessed Ms. Anderson as party with fault for the late payment.

This, and other similar acts of corporate careless, have cause Ms. Anderson and her parents much

anguish as well as harming Ms. Anderson's prior perfect credit history.

Now comes the Plaintiff, Amanda Anderson, who makes complaint as follows:

**The Plaintiff**

1. Amanda Anderson is a 26 year old originally from Wisconsin.  She moved to Massachusetts in April of 2014.

2. Ms. Anderson attended Cedar Crest College, in Allentown, Pennsylvania, from which she received a Bachelor of Science in Chemistry.

3. To finance her education, Ms. Anderson took out loans from Citibank which her parents co-signed as responsible parties.

4. At some point, Citibank sold some of her loans to the Defendants (Collectively "Discover").  However the loans continued to be serviced by the same company, resulting in the oddity of sending two separate checks to the same location.

5. Ms. Anderson, following college, worked in industry as a chemist for Brenntagg in Milwaukee, Wisconsin.  Working conditions were unfavorable and pay was poor, resulting in Ms. Anderson seeking alternatives.  Ms. Anderson left Brentagg after working there, with good performance reviews, for three years.

6. Ms. Anderson took her college roommate, Mrs. Kathleen Collard, up on an offer to move to Massachusetts and live with the Collards.  Ms. Anderson was scheduled to, and did, take a position as a chemistry teacher at Lynn English High School.

7. However, like most teaching positions in Massachusetts, children and teachers receive the summer off.  This left Ms. Anderson unemployed and unpaid for roughly three months until school started.

8. Ms. Anderson called both of her student loan companies and explained that she wished to put her loans into forbearance, given her current unemployment.  Citibank, still holding a small portion of Ms. Anderson's loans, was extremely accommodating.  Discover was not so helpful

**The Defendants**

9. Discover Bank is a large national financial institution.  It is the umbrella parent of several related business entities.  Although not at issue in this litigation, Discover Bank is best known for its credit card business.  Discover's annual report for 2014 indicates that the Company originates and services more than $500 Million in student and personal loans in Massachusetts alone.  Discover is headquartered in Illinois.

10. Discover Student Loans is a subset of Discover Bank, a division which was substantially grown with the purchase of the Student Loan Corporation.

11. Discover Financial Services is another arm of the Discover business empire.  Discover Financial Services has an address in Carol Stream, Illinois.

12. Student Loan Corporation was an independent business before it was acquired and its operations now fall under Discover Student Loans.  Student Loans Corporation now appears to primarily service Discover loans.  Student Loans has an address in Salt Lake City, Utah.

**The First Summer**

13. At the end of May in 2014, Ms. Anderson moved to Lynnfield, Massachusetts after accepting a teaching Position at Lynn English High School.  As part of her cross-country move from Wisconsin, and her summer of unemployment, she put her loans into forbearance.

14. On June 25, 2014, Ms. Anderson called Discover to put her loans with them into forbearance.  She initially spoke to a woman named Penny before later being transferred to a Senior Account representative.  The sum of the conversation was that Ms. Anderson was told that she positively must make the July monthly payment before Discover could talk with Ms. Anderson about providing any accommodation.  Ms. Anderson was also told that she had to call back in August to ask about reduced payments.

15. On July 8, 2014, a payment of roughly $620 was taken from Ms. Anderson's bank account. Following the earlier instructions, Ms. Anderson called Discover on August 4, 2014.  At that time she spoke with Alyssa before later being transferred to Kai, another Senior Account Representative.  As a result of the conversation, Ms. Anderson was placed on reduced payment plan for 6 months, at $470/month.  A pre-condition of the reduced payment plan was an automatic payment arrangement ("auto-pay") which required Ms. Anderson to preauthorize the electronic withdrawal of money from her account.  A collateral aside to the auto-pay arrangement was that the monthly due date for her bill was changed from the 6th of every month to the 20th of each month.  The Discover representative's graciously told Ms. Anderson that her loans would be in an administrative forbearance for the month of August and that she owed no payment.

16. Ms. Anderson shortly thereafter received a letter dated the following day, August 5, 2014, confirming the $470/month auto-pay arrangement

17. On August 23, 2014, Ms. Anderson received a notice that she had missed her payment. The notice was sent three days after the monthly due date, even though an auto-pay arrangement was in place.  The money was in the bank account and could have been drawn by Discover, but was not.  The money probably should not have been drawn out given Discover's earlier promise of administrative forbearance.

18. Ms. Anderson's parents, cosigners on her various student loans, also received 2 letters dated August 28, 2014, notifying them that Ms. Anderson had not made the August payment.

19. On September 2, 2014, Ms. Anderson again called Discover and spoke to a representative named Breah.  Though stressful the conversation yielded good news.  There was no bill due for August and that invoice was an error on Discover's part.  A courtesy forbearance was placed on Ms. Anderson's account for a month and no late fees would be applied.  There was another miscalculation, and Ms. Anderson's monthly bill would have to be $503/month rather than $470/month, but someone would follow up within the week to help Ms. Anderson correct the auto-pay arrangement.

20. The next day, September 3, 2014, Discover sent Ms. Anderson an email, still asserting that the August 20th payment was due and unpaid.  This was followed by a pair of letters to Ms. Anderson's parents dated September 4, 2014, which claimed that the August payment had not been made.

21. In September 2014, Discover was again three days late in withdrawing its money from Ms. Anderson's account, doing so on the 23rd in the amount of $470.

22. True to form, Discover sent two letters to Ms. Anderson's parent's dated September 26, 2014, claiming that the bill was not paid.  A third letter was sent out on September 27th which was substantially the same.

23. In the meantime, on September 26, 2104, Discover sent Ms. Anderson a bill for $1169.17 including a $45 late fee.

24. Despite the withdrawal, by Discover, of funds on the 23rd, an email was sent on October 1, 2014, claiming that the September payment had been missed.  On October 4, 2014, Discover sent out a letter claiming that the payment had been missed and was unpaid.  The same day, two more letters went out from Discover addressed to Ms. Anderson's parents with the same claim.  Another email from Discover on October 8, 2014, asserted that the September 20th payment had been missed.

25. Discover was only one day late in withdrawing the October payment of $470, taking it on October 21, 2014.  Nonetheless, a letter was again sent to Ms. Anderson's parents dated October 25, 2014, asserting a missed payment.  Two more letters to Ms. Anderson's parent's followed, dated October 28, 2014.  Another pair of letters was sent to the Anderson parents dated November 4, 2014, again asserting deficiencies in payment.

26. Ms. Anderson, because of the stress and strife of Discover dogging her and her parents over their own failure to timely withdraw money, hired an attorney.  A demand letter under Mass. General Law, G. L. c. 93A, was sent to Discover at the end of October.  The demand letter, which went unanswered, asserted that it was deceptive to send out letter claiming missed payments for payments that had been made.  The letter also asserted potential

violations of state and federal debt collection laws and the electronic funds transfer act. The demand letter went unanswered.

27. An automatic withdrawal of $470 was taken by Discover on November 21, 2014, and the next day, November 22nd, two letters were sent to Ms. Anderson's parents asserting a missed payment.

28. An invoice of $472.74 was sent to Ms. Anderson on November 26, 2014. The invoice also tacked a $45 late fee onto the monies allegedly owed.

**2015-Another troublesome Summer**

29. Thereafter, until the next summer, things were even and straightforward. The auto-payment arrangement worked without a hitch for December, January, and February, regularly withdrawing $470.

30. When the auto-payment arrangement expired, Ms. Anderson paid by check through the mail as was her custom, excepting a phone payment with Discover made for $480.96 on April 1, 2015. On April 22, 2015 Ms. Anderson paid $472.74. On May 21, 2015, Ms. Anderson made a payment of $477.45.

31. Discover sent a curious letter on June 4, 2015, claiming that they could not verify Ms. Anderson's enrollment through a National Student Clearinghouse, and that Ms. Anderson must send proof of her enrollment.

32. Two weeks later, on June 19, 2015, as school was ending for the summer and Ms. Anderson would again be unemployed, she called Discover. She spoke with a representative named Tyler who was based in Phoenix. The representative said that the only way to put the loans into forbearance over the summer was to make the full, increased June payment. A payment was scheduled for the next day, June 20th, and Ms. Anderson was told that there would be a follow-up phone call to assist her in putting the loans into forbearance on June 23rd.

33. On June 22, 2015, at roughly 3:45 PM, Ms. Anderson again spoke with Tyler who said that no payments would be due for July and August. The following day a payment of $656.93 was withdrawn from Ms. Anderson's bank account on June 23, 2015.

34. Ms. Anderson's roommate, Mrs. Kathleen Collard and her husband, had since decided to start a family and a baby was expected to the young couple in July. Ms. Anderson moved out to give the new family some privacy. This imposed a new substantial rent obligation upon Ms. Anderson.

35. Concerned that the $600/month figure that Discover was now seeking was too high for her income, Ms. Anderson reached out to Discover. On September 9, 2015, just before 1:30PM, Ms. Anderson spoke with a Discover representative named Lance who said that

reduced payments were not an option and the full amount must be paid.  On September 23, 2015, a payment of $667.27 was made to Discover.

36. On October 19, 2015, Ms. Anderson made a concerted effort to reach Discover and seek some relief before the October monthly payment was due.  Around 11:30AM, Ms. Anderson spoke with a Discover representative named Christina, who could not help. Christina indicated that Ms. Anderson should negotiate with other creditors to reduce her obligations so Discover could be paid.  Christina gave Ms. Anderson several 800 hotline phone numbers, theoretically to assist with rent and utilities relief, but Christina did not say who the numbers went to.   Christina unhelpfully suggested, in response to an unaffordability argument, that Ms Anderson leave her employment as a public school teacher for something that would pay better.

37. Incensed, Ms. Anderson again called Discover just before noon on October 19th.  She spoke with a Discover representative named Dawn who refused to transfer the phone call to Discover's legal office.

38. Three hours later, at 3:17PM, Ms. Anderson called again with the assistance of her attorney.  The call was answer by Aaron, transferred to Rachel, further transferred to Angel, before being turfed to MacKenzie.  Ms. Anderson told the Discover employees, that she could not afford the amount they were demanding.  She further asserted that Discover was putting her in the perverse situation, where they were dis-incentivizing responsible debtors. Ms. Anderson noted that under Massachusetts law, a judgment debtor can only be forced to pay 15% of their gross income to satisfy debts.  Ms. Anderson explained that she was trying to be conscientious, and that she would, at the present moment, do better economically to stiff Discover for the bill because then the law would provide her protection.  All the better for them to work with her.  The arguments were all for naught. The Discover employees said nothing could be done.

39. Apparently, Ms. Anderson, by taking reduced payments in 2014, had permanent increased her monthly bill.  This was not explained to Ms. Anderson before the reduced payments were put in place in 2014.

40. On the same day, October 19, 2015, Ms. Anderson, with the assistance of her attorney, then filed a complaint with the federal Consumer Finance Protection Bureau (CFPB).  After some skirmishing where Discover gratuitously demanded proof of the identity of Ms. Anderson's attorney, and the time frame in which it should be provided, the CFPB denied the complaint.  Discover had defended the CPFB complaint by saying that the matter was in litigation, and the CPFB declined to intervene.

41. Unable to do anything else, Ms. Anderson paid what she could and on October 26, 2015, Discover cashed a check from her for $450.  Ms. Anderson works three jobs and struggles to meet her rent, and unfortunately, food and shelter must come before debts.

42. Two days later, on October 28th, Ms. Anderson received a bill for $884.54.

43. Repeating old habits, Discover sent Ms. Anderson an email on October 30, 2015, stating that her payment had not been received.

44. On November 24, 2015, Ms. Anderson made a payment of $300.  Discover sent a bill three days later, on the 27th, for $1251.81.

45. An email followed on December 1, 2015, claiming that Discover had not received the November payment.

**Miscellaneous**

46. The Federal Court has subject matter jurisdiction.  This complaint presents federal claims and pendant state law claims.  The Federal Court also has diversity jurisdiction based on the citizenship of the parties, and the fact that the anticipated recovery will likely exceed the amount in controversy requirement.

47. The Federal Court has personal jurisdiction over Discover.  In an corporate annual report, Discover reported originating and servicing more than $500 Million worth of student and personal loans from Massachusetts alone.  They have clearly availed themselves of the opportunity to do business in Massachusetts.  They also have a registered agent in Massachusetts.

48. Venue is proper in Massachusetts.

49. The Plaintiff demands a jury trial on all issues so triable.

**Count I—Consumer Practices Act—93A**

50.  Discover has enacted a pattern of deceptive consumer practices.

51. Such prohibits acts include failing to acknowledge and credit payments made.  Discover has also doggedly harassed both Amanda and her parents, with a deluge of letters and emails, even when Discover is the culpable party for Discover not having received money made available to it.

52. Although Discover has denied it, Discover has continued to harass Ms. Anderson after she hired an attorney, and asserted her rights.  This is prohibited by both Chapter 93A and the Attorney General's debt collection regulations.

53. Chapter 93A was also violated when Discover misrepresented the amount of the debt owed, either through deceptively approving an insufficient auto-pay arrangement, failing to credit the payment, or sending misleading writing that no payment had been made.

54. Discover refused, initially, to deal with Ms. Anderson's attorney.

7

55. It is also a violation to for Discover to have conditioned any discussion of account remediation or settlement of debt upon the tendering of a payment. Discover has done this twice to Ms. Anderson.

56. Discover has failed to deal with Ms. Anderson in good faith, with its representatives repeatedly making assurances about reduced payments or forbearance and then countering with contrary writings.

57. Discover did not respond to the October 2014 demand letter. Therefore Discover is subject to special and exemplary damages, among others, which may be trebled under Chapter 93A

## Count II—Electronic Funds Transfer Acts

58. Discover has violated the Federal Electronic Funds Transfer Act (EFTA) and the Massachusetts Electronic Funds Transfer Act.

59. Both acts seek to protect the integrity of the electronic commerce through a well-designed statutory scheme. The Acts, both of them, require that Ms. Anderson be given the benefit of the doubt should technical problems have prevented Ms. Anderson's payment from reaching Discover on time, in the September 2014, October 2014, and November 2014 monthly payments.

60. The auto-payment should not have been confirmed, or even set up, at an amount that Discover would later say was insufficient. Both acts prohibit misrepresentation about electronic transfers, to promote confidence in the nationwide system, yet Discover did misrepresent the amount and timing of the transaction that would be needed to satisfy it. It is contrary to the Acts to require Ms. Anderson to follow-up at $470/month electronic payment with a $33 paper check.

61. Additionally Ms. Anderson was not given the comprehensive written notice about her rights under either Electronic Funds Transfer Act, which both acts require.

62. The EFTA and its local equivalent also require a written consent by Ms. Anderson before pre-authorized transfers may occur. Discover did not require or request Ms. Anderson's written consent before entering into the arrangement. Nor did Ms. Anderson give any written consent.

63. The EFTA, specifically 15 U.S.C. §1693K, and its local equivalent specifically prohibit the compulsory use of electronic transfers. In this case, Discover violated this provision of law by requiring Ms. Anderson to setup an auto-pay arrangement before discussing or implementing any form of forbearance or reduced payments.

## Count III—Fair Credit Billing Act

64. Discover has racked up a lengthy pattern of violating the Fair Credit Billing Act, 15 U.S.C. §1601 *et seq.*, primarily through misrepresenting and not crediting Ms. Anderson's

payments to them, and then sending out numerous notices that the monthly bills had gone unpaid.

## Count IV-Fair Debt Collection Practices Acts

65. Discover has violated the Fair Debt Collection Practices Act.

66. Among other problems, Discover continued to harass and harangue Ms. Anderson after it was clearly aware that she was represented by an attorney.  This was done both directly and indirectly.  Discover also unreasonably refused to communicate with Ms. Anderson's attorney or to accept his authority to speak on her behalf.

67. Discover has harassed or abused Ms. Anderson by sending letters and emails denying that it had received payment, after it had received payment.  Discover's letters and emails were also misrepresentations within the meaning of the Act.  These misrepresentations were made not only to Ms. Anderson, but also to her parents.

68. Discover also, after falsely representing that there would be no late fees, attempted to bill Ms. Anderson for late fees.

69. Where Ms. Anderson has several loans with Discover, Discover has refused on several occasions to apply her debt or payments as she has directed in violation of the Act.  In particular Discover has forbearance and reduced payment policies, of flexible application.  To put her loans into forbearance for a month or two in the 2015, Discover wants to have her use most or all of her allotment of forbearance.  Discover wants to have its cake and eat it too, when Ms. Anderson makes payment it must be to all three loans equally as one, but when she wants to put the loans into forbearance, she will be charged three times for each month.  This is contrary to the Act.

70. Discover has also reported, falsely, upon Ms. Anderson's credit history.

## Count V—Fair Credit Reporting Act

71. Discover has brazenly abused and circumvented the Fair Credit Reporting Act (FCRA).

72. As a "furnisher" of information Discover is under an obligation to provide only accurate information to the credit reporting agencies.  Discover violated this duty.by providing inaccurate and misleading information, falsely asserting that Ms. Anderson was delinquent on her payments and had missed some of them.  Discover also reported inaccurate information about the amount.

73. Discover has abused the FCRA by failing to notify Ms. Anderson that it would report negatively upon her credit, as it was required to.

74. In failing to notify Ms. Anderson, Discover also deprived Ms. Anderson of her rights to contest the accuracy of the information, or to require an investigation, or to issue a contrary statement and have it lodged in her credit file.

75. Discover has destroyed, without good cause, Ms.Anderson's near perfect credit history, and has caused additional collateral damage from other creditors.

## Count VI—Libel and Defamation

76. Discover has libeled and defamed Ms. Anderson by publishing in written letters, and in reporting to credit agencies, untrue facts about her debt delinquency.

77. Discover has repeatedly issued false writings claiming that Ms. Anderson did not make a payment that had been made, or had been authorized, or had been made in part.

78. These untrue allegations were repeated to credit reporting agencies for the express purpose of causing Ms. Anderson economic harm.

79. Discover also falsely reported the amounts that Ms. Anderson was allegedly delinquent with, for the purpose of making her alleged deficiencies more egregious, by fiddling the figures and only reporting a smaller loans.  This created that false appearance that Ms. Anderson was simply irresponsible in not paying a smaller amount, rather than her not having economic means to pay a larger amount.

## Damages

80. The Plaintiff pleads for triple damages under Chapter 93A and the regulations.

81. The Plaintiff pleads for all relevant statutory damages.

82. The Plaintiff pleads for punitive damages to punish Discover for its improper and illegal conduct.

83. The Plaintiff pleads for economic damages from the destruction of her reputation and credit history.

84. The Plaintiff pleads for damages for mental harm, stress, and anguish, cause by Discovers illegal conduct.  The Plaintiff also pleads for compensatory damages in such amount as the Court deems just.  In particular, Discover's pattern of harassment has exacerbated several existing mental and physical conditions plaguing Ms. Anderson.

85. Discover's actions have caused harm to Ms. Anderson's professional reputation.  Her student loan issues have made her the subject of ridicule among her peers and colleagues. The stress of the entire situation has caused repeated emotional outbursts and affected Ms. Anderson's ability to perform her duties in her new career as a teacher.  Being caught

by her students crying her in classroom has caused her to seriously reconsider her entire Massachusetts adventure.

Respectfully Submitted,

Amanda Anderson
By her Attorney

Michael C. Walsh
BBO 681001
Walsh & Son LLP
PO Box 9
Lynnfield, MA 01940
617-257-5496
Walsh.lynnfield@gmail.com