## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

_____

|  |  |  |
|---|---|---|
| AMANDA ANDERSON, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:16-cv-10398-FDS |
| | ) | |
| DISCOVER FINANCIAL SERVICES, | ) | |
| DISCOVER STUDENT LOANS, | ) | |
| DISCOVER BANK, | ) | |
| STUDENT LOAN CORPORATION | ) | |
| | ) | |
| | ) | |
| Defendants. | ) | |

_____)

### DEFENDANTS' RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR AN EMERGENCY PRELIMINARY INJUNCTION

Defendants Discover Financial Services, Discover Student Loans, Discover Bank and Student Loan Corporation (hereinafter, collectively  "Discover") hereby submit this brief opposition to the Motion for Emergency Preliminary Injunction filed in this matter (Dkt. 4) (the "Motion").  In support of this opposition, Discover has filed the accompanying Declaration of Lynne VanHorn (the "VanHorn Decl.").  As discussed in more detail below, the Court should deny the Motion.

### Preliminary Statement

In their Motion, plaintiff Amanda Anderson ("Ms. Anderson") and her father Robert Anderson ("Mr. Anderson"), who by separate motion seeks to become a plaintiff in this matter, ask the Court to grant them preliminary relief for what they claim is improper negative reporting on Mr. Anderson's credit.  More specifically, the Andersons ask this court to order Discover (1) to "retract, without prejudice, its negative reporting on Mr. Anderson's credit history" as a co-

signor of two of Ms. Anderson's student loans, (2) to provide Mr. Anderson with notice of the

negative report, (3) to conduct an investigation of the negative report, and (4) to provide Mr.

Anderson "his right to insert a statement into his credit history file."  They seek this relief under

the Fair Credit Reporting Act (FCRA), 15 U.S.C. § 1681 *et seq.* claiming, *inter alia*, (1) that they

have a likelihood of success on the merits of the FCRA claim, and (2) that immediate relief is

necessary because, absent such relief, Mr. Anderson will not be able to refinance his home.

The Court should deny this Motion.  To begin with, the Andersons cannot show any

likelihood of success on the merits of their FCRA claim, which they appear to press under 15

U.S.C. § 1681s-2(a) and (b).  *See* Motion at 3.  Courts have consistently held that no private right

of action exists for a violation of § 1681s-2(a), and, although a private right of action can exist

under § 1681s-2(b), the Andersons have not shown, indeed, have not even alleged, the required

preconditions for such an action.  In addition, with respect to the negative credit history about

which Mr. Anderson complains -- late payments on two student loans from the end of 2015 --

there is no error in the information Discover has reported to the credit bureaus.  Finally, the

Andersons cannot show irreparable harm if the requested order is not issued.  Mr. Anderson's

inability to refinance his home does not present the type of irreparable harm required for the

extraordinary relief he seeks here, particularly in light of the low probability of success on the

merits of the FCRA claim.

### Background

Ms. Anderson is a borrower on three student loans serviced by Discover Student Loans

and Student Loan Corporation.[1]  VanHorn Decl. at ¶ 2.  Mr. Anderson is a co-signor on Loan

---

[1] Due to privacy concerns, Discover will refer to the three loans as Loan #21, Loan #23 and Loan #26.

#23 and Loan #26.[2]  VanHorn Decl. at ¶ 3.  In the summer of 2014, Ms. Anderson requested to

be placed into Discover's Reduced Payment Program ("RPP") for her three student loans.

VanHorn Decl. at ¶ 4.  Discover placed her into that program in August 2014.  *Id.*  Discover,

however, inadvertently made an error in processing the RPP for Ms. Anderson; and the error

resulted in Ms. Anderson's student loans incorrectly being reflected as past due for two billing

cycles in late 2014.  VanHorn Decl. at ¶ 5.[3]

Ms. Anderson made her payments under the RPP through May 2015, which was the

agreed-upon end date of the program.  VanHorn Decl. at ¶ 6.  In June 2015, the loan payments

re-set to a higher amount in accordance with the RPP, from approximately $480 to $660 per

month in total for the three loans.  VanHorn Decl. at ¶ 7.  In June 2015, Ms. Anderson informed

Discover that she would be unable to make the payments over the summer because she would

not have income from her teaching job.  VanHorn Decl. at ¶ 8.  She applied for and received a

forbearance for July and August 2015.  *Id.*  In September 2015, at the conclusion of the

forbearance period, the loan payments re-set to approximately $670 per month.  VanHorn Decl.

at ¶ 9.  In October 2015, Ms. Anderson contacted Discover and requested a lower payment.

VanHorn Decl. at ¶ 10.  Ms. Anderson was not eligible at that time for enrollment in the RPP,

but she was offered a forbearance.  VanHorn Decl. at ¶ 11.  Ms. Anderson declined the offer of

forbearance, and instead began making partial loan payments beginning in October 2015.  *Id.*

She has continued to make reduced loan payments since October.  *Id.*  These reduced payments

---

[2] Ms. Anderson's mother, Nancy Anderson, is a co-signor on Loan #21.

[3] This error, although discussed in the Complaint, is not at issue in the current Motion.  The Motion focuses on Discover's reporting of delinquent payments in late 2015.  *See, e.g.,* Motion at 7 (seeking relief for negative reporting dating from September 1, 2015); Robert Anderson Affidavit (the "Anderson Aff.") (Dkt. 4-1) at ¶ 12 (complaining about "dinging my credit" since December 20, 2015).  The Complaint also notes that this billing problem ceased to be a problem beginning in December 2014.  *See* Complaint at ¶ 29 ("Thereafter, until the next summer, things were even and straightforward.  The auto-payment arrangement worked without a hitch for December, January, and February . . .").

have left past due amounts on earlier months.  VanHorn Decl. at ¶ 12.  Discover has reported

those past due amounts to credit bureaus.  VanHorn Decl. at ¶ 13.

Because Mr. Anderson is a co-signor on Loan #23 and Loan #26, the past due status of

the loans appears on his credit reports.  VanHorn Decl. at ¶ 14.  Mr. Anderson says that in the

first week of February 2016, he learned that Discover had been "dinging my credit" since

December 20, 2015.  *See* Anderson Aff. at ¶ 12.  Discover has not received notification from a

credit reporting agency ("CRA") that Mr. Anderson has placed the account in dispute.  VanHorn

Decl. at ¶ 15.

**Argument**

**A.     The Preliminary Injunction Standard**

The requirements to obtain a preliminary injunction are well settled.  The movant must

demonstrate:  "1) a likelihood of success on the merits, 2) irreparable harm to the plaintiff should

preliminary relief not be granted, 3) whether the harm to the defendant from granting the

preliminary relief exceeds the harm to the plaintiff from denying it, and 4) the effect of the

preliminary injunction on the public interest."  *Rio Grande Cmty. Health Center, Inc. v. Rullan*,

397 F.3d 56, 75 (1st Cir. 2005) (citing *Matrix Group Ltd. v. Rawlings Sporting Goods Co.*, 378

F.3d 29, 33 (1st Cir. 2004)).  Although courts must weigh all these factors, "the cynosure of this

four-part test is . . . the movant's likelihood of success on the merits."  *Peoples Fed. Sav. Bank v.*

*People's United Bank*, 672 F.3d 1, 9 (1st Cir. 2012) (quoting *Borinquen Biscuit Corp. v. M.V.*

*Trading Corp.*, 443 F.3d 112, 115 (1st Cir. 2006)).  *See Walsh v. Seterus Inc.*, No. 12-11980,

2012 WL 6052008, at *1 (D. Mass. Dec. 4, 2012) (citing *Wine and Spirits Retailers, Inc. v.*

*Rhode Island,* 418 F.3d 36, 46 (1st Cir. 2005)) (quoting *New Comm Wireless Servs., Inc., v.*

*SprintCom, Inc.*, 287 F.3d 1, 9 (1st Cir. 2002)) (. . . "if the moving party cannot demonstrate that

he is likely to succeed in his quest, the remaining factors become matters of idle curiosity").

> **B.     The Andersons Cannot Show a Likelihood of Success on the Merits of Mr. Anderson's FCRA Claim**

Although the Complaint sets forth various federal and state law claims on behalf of Ms.

Anderson, the sole legal claim presented in the Motion is a violation of Mr. Anderson's rights

under the FCRA.   Although the Complaint provides no specific citations to the FCRA, the

Motion cites to 15 U.S.C. § 1681s-2, specifically, §§ 1681s-2(a) and (b).  The Motion's reliance

on §§ 1681s-2(a) and (b) is unavailing for three reasons.   First, there is no private right of action

under § 1681s-2(a).  Second, Mr. Anderson has not satisfied the prerequisites to file suit under §

1681s-2(b), because there is no allegation that Mr. Anderson filed a dispute with a credit

reporting agency ("CRA") and, more significantly, Discover has not received notification of such

a dispute.  Third, there is no inaccuracy in the information Discover has reported to the credit

bureaus regarding the 2015 delinquencies at issue here.

> **1.     Section 1681s-2(a) of the FCRA Does Not Provide A Private Right of Action To Mr. Anderson**

The FCRA, in pertinent part, imposes certain obligations on entities that furnish credit

information to CRAs.  *See* 15 U.S.C. § 1681s-2.  Section 1681s-2 imposes two duties upon

furnishers of information: "the duty to provide accurate information [§ 1681s-2(a)] and the duty

to undertake an investigation upon receipt of notice of dispute from a consumer reporting agency

[§ 1681s-2(b)]."  *Leet v. Cellco P'ship*, 480 F.Supp.2d 422, 428 (D. Mass. 2007) (quoting *Gibbs*

*v. SLM Corp.*, 336 F.Supp.2d 1, 11 (D. Mass. 2004)) (quotation and internal citation omitted).

Pursuant to §§ 1681s-2(c) and (d), however, the enforcement of violations of § 1681s-2(a) is

limited exclusively to certain state and federal officials.  *Id.*  (citing *Gibbs*, 336 F.Supp.2d at 11);

*Chiang v. Verizon New England Inc.,* 595 F.3d 26, 35 (1st Cir. 2010) ("Congress expressly limited furnishers' liability under § 1681s-2(a) by prohibiting private suits for violations of that portion of the statute").  "Consequently, courts have consistently held that there is no private action for violations of § 1681s-2(a)."  *Leet*, 480 F.Supp.2d at 428 (quoting *Gibbs*, 336 F.Supp.2d at 11).

Although the Complaint does not cite to a specific provision in the FCRA, it appears to make allegations that fall squarely within the ambit of § 1681s-2(a).  Specifically, the Complaint alleges that Discover violated the FCRA by providing inaccurate and misleading information, and failing to provide notice that it would report negative information.  *See* Complaint at ¶¶ 72-73.  Notwithstanding the Complaint's lack of specificity, the Motion makes more explicit the fact that Mr. Anderson is seeking relief for violations of § 1681s-2(a).  *See, e.g.*, Motion at 3 (listing a furnisher's obligations under § 1681s-2(a); Motion at 4 ("Discover has provide[d] no notice to Dad that they were placing negative financial information in his file, despite being required to under 15 U.S.C. § 1681s-2(a)(7)(a)").  Mr. Anderson has no private right of action under the FCRA for these alleged violations.

### 2.  Mr. Anderson has no claim under § 1681s-2(b) because no dispute has been reported to Discover by a CRA

A private right of action does exist for violations of § 1681s-2(b).  *Leet*, 480 F.Supp.2d at 428 (citing *Gibbs,* 336 F.Supp.2d at 11).  However, the duty to investigate a dispute over the completeness or accuracy of information furnished only arises "if the CRA, acting as a gatekeeper, has previously notified the furnisher of the consumer's dispute."  *Chiang v. MBNA*, 620 F.3d 30, 30 (1st Cir. 2010) (citing § 1681s-2(b)(1)).  Accordingly, "courts have 'uniformly' concluded that § 2(b) 'provides a private cause of action only if the furnisher received notice from a consumer reporting agency, as opposed to the plaintiff alone, that the credit information

was disputed.'" *Leet*, 480 F.Supp.2d at 428 (citing *Gibbs,* 336 F.Supp.2d at 11-12) (quoting

*Aklagi v. NationsCredit Fin. Servs. Corp.,* 196 F.Supp.2d 1186, 1193 (D. Kan. 2002)); *see also*

*Chiang,* 595 F.3d at 35 n. 8 ("[a] notice of disputed information provided directly by the

consumer to a furnisher does not trigger a furnisher's duties under § 1681s-2(b)").

The Complaint and Motion do not contain allegations that a CRA notified Discover of a

dispute by Mr. Anderson regarding the completeness or accuracy of the information contained in

his credit report.  The Complaint and Motion do not allege that Mr. Anderson even reported any

incomplete or inaccurate information in his credit report to the CRA.  Discover has been unable

to locate any notice that it received from a CRA of a dispute regarding the 2015 delinquencies it

reported to the CRAs.  Under such circumstances, Mr. Anderson cannot bring an action for a

violation of § 1681s-2(b).[4]

### 3.   The Information Contained in Mr. Anderson's Credit Report Regarding the 2015 Delinquencies is Accurate.

Even assuming that Mr. Anderson might be able to show that he has a right to bring an

action under §§ 1681s-2(a) and (b), he still would not be able to succeed on his claim.  Discover

has collected the information related to the two student loans at issue and has determined that the

information reported to the credit bureaus regarding the 2015 delinquencies is accurate.  *See*

VanHorn Decl., Exhibits A and C.  Beginning in October 2015, after declining Discover's offer

of a forbearance, Ms. Anderson began paying amounts less than the amount due under the

relevant loan agreements.  VanHorn Decl., ¶ 11.  Discover has applied the amounts paid to the

amounts due, but because the payments have been for less than the full amount, a past due

---

[4] Mr. Anderson might argue in response that he did not dispute the delinquency because he did not have notice of the effect on his credit report until early February 2016, at which time he filed his lawsuit.  Such an argument is unavailing.  When he learned of the reported delinquency, Mr. Anderson's recourse under the FCRA was to notify the credit bureaus that he disputed the delinquency, the CRAs would then notify Discover, which would then investigate the dispute.  It would not be reasonable to allow a plaintiff to bring a claim against Discover for failing to investigate a dispute when it had no notice that there was a dispute to investigate.

balance has accrued.  VanHorn Decl., ¶ 12.  Significantly, nowhere in the Motion do the

Andersons assert that there is any inaccuracy in the reports Discover made to the CRAs for the

2015 past due amounts.  Accordingly, even if Mr. Anderson were able to bring a claim under the

FCRA (which, for the reasons stated above, he cannot), he cannot show a violation of its

provisions.

### C.      Mr. Anderson Has Not Shown Irreparable Harm

To warrant the extraordinary relief of a preliminary injunction, the plaintiff must

demonstrate that he faces "a significant risk of irreparable harm if the injunction is withheld."

*City of Lowell v. Enel N. Am., Inc.,* 705 F. Supp. 2d 116, 118 (D. Mass. 2010).  Irreparable harm

means harm that "cannot adequately be compensated for either by a later-issued permanent

injunction, after a full adjudication on the merits, or by a later-issued damages remedy." *Rio*

*Grande Cmty. Health Center, Inc.*, 397 F.3d at 76 (citing Charles A. Wright, Arthur R. Miller &

Mary Kay Kane, 11A *Federal Practice & Procedure* § 2948.1, at 149 (2d ed. 1995)).  Moreover,

"[a] finding of irreparable harm must be 'grounded on something more than conjecture, surmise,

or a party's unsubstantiated fears of what the future may have in store'" and the threat must be

real and immediate.  *City of Lowell,* 705 F. Supp. 2d at 119. Where the purported harm is merely

speculative, the irreparable harm requirement is unsatisfied.  *See id.* at 120; *Rubacky v. Morgan*

*Stanley Dean Witter Credit Corp.,* 104 Fed.Appx. 757, 758-59 (1st Cir. 2004) (district court

properly denied preliminary injunction against foreclosure sale where there was no real and

immediate threat).

The Motion alleges that, if Ms. Anderson's parents are unable to refinance their home

within the month, they will lose their house.  Motion at 2, 5.  This assertion dramatically

overstates the evidence the Andersons have proffered, however.  Nowhere in his affidavit does

Mr. Anderson say that he faces imminent foreclosure.  Indeed, nowhere in the affidavit does Mr. Anderson say that they will face the loss of the home or inability to pay their existing mortgage. Instead, Mr. Anderson states in his affidavit only that "if we cannot refinance our house, our budget will remain severely strained."  Anderson Aff., ¶ 19.  That assertion falls well short of alleging irreparable harm entitling the extraordinary preliminary relief he seeks.

### D. The Other Preliminary Injunction Factors Do Not Provide A Basis for Granting The Motion

The two remaining considerations -- the balance of harms and the public interest -- do not support the Motion either.  The Andersons argue that because of Discover's size and ability to defend itself, the balance of harms weighs heavily in the Andersons' favor.  Motion at 6.  They also argue that they are only seeking to put Mr. Anderson in the position he would have been in before the delinquencies were reported.  Yet, Mr. Anderson's point about Discover's relative financial strength overlooks what Mr. Anderson is asking the Court to do, namely, remove a *truthful* report of a delinquency from his credit report so that he can apply for a mortgage from another lender with a lower interest rate than he is currently paying.  To do so may well create a collateral harm, specifically, inducing a lender to extend credit on terms based on less than full information.

It is in this sense as well that the requested relief would not be in the public interest.  As the Andersons recognize, Congress, through the FCRA, has set up a system that balances the relative interests of lenders and borrowers.  That system prohibits borrowers from bringing private lawsuits under the FCRA for failure to comply with the reporting requirements of § 1681s-2(a) and it permits a claim for failure to investigate a dispute only after furnisher has been notified by the CRA of the dispute.  To permit a plaintiff to bypass that carefully

constructed statutory scheme by filing a preliminary injunction would frustrate the statutory scheme and would not be in the public interest.

## Conclusion

For all of the foregoing reasons, Plaintiffs' motion for an emergency preliminary injunction should be denied.

Dated:  March 4, 2016                              Respectfully submitted,
                                                   */s/ Jack W. Pirozzolo*
                                                   Jack W. Pirozzolo (BBO# 564879)
                                                   Corey D. Winer (BBO# 678410)
                                                   SIDLEY AUSTIN LLP
                                                   60 State Street, 36th Floor
                                                   Boston, MA, 02109
                                                   (617) 223- 0304
                                                   jpirozzolo@sidley.com
                                                   cwiner@sidley.com

## CERTIFICATE OF SERVICE

I hereby certify that on this day, March 4, 2016, I electronically filed the above Response in Opposition to Plaintiffs' Motion for an Emergency Preliminary Injunction to using the CM/ECF system, which will automatically send email notification of such filing to all attorneys of record.

Dated:  March 4, 2016                              */s/ Jack W. Pirozzolo*
                                                   Jack W. Pirozzolo